Honorable Leif B. Erickson
Federal Magistrate Judge
Missoula Division
Russell E. Smith Courthouse
201 East Broadway, Room 370
Missoula, MT 59802

FILED
MISSOULA, MT

2005 NOV  3  PM 4 11

PATRICK E. DUFFY

BY _____
      DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### MISSOULA DIVISION

UNITED STATES OF AMERICA,

                    Plaintiff,

vs.

LARRY SANDERS; MARI SANDERS;
VALLEY BANK OF RONAN; FIRST
STATE BANK; SANDERS COUNTY
DEPARTMENT OF REVENUE; and
STATE OF MONTANA,

                    Defendants.

CAUSE NO. CV 04-35-M-LBE

FINDINGS AND
RECOMMENDATIONS OF U.S.
MAGISTRATE JUDGE

This matter comes before the Court on Plaintiff's Motion for
Summary Judgment filed March 23, 2005.  The Court being fully
informed, enters the following:

## RECOMMENDATION

IT IS RECOMMENDED that Plaintiff's Motion for Summary
Judgment (Doc. No. 34) be **GRANTED**.  Plaintiff's liens for
assessments, penalties, and interest should be reduced to
judgment in an amount established as current by Plaintiff, and
furthermore Plaintiff should be permitted to foreclose on the
entirety of the two parcels at issue in this case.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - PAGE 1

NOW, THEREFORE, IT IS ORDERED that the clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate upon the parties.  The parties are advised pursuant to 28 U.S.C. § 636, any objections to these findings must be filed with the Clerk of Court and copies served on opposing counsel within ten (10) days after receipt hereof, or objection is waived.

DONE AND DATED this 3ⁿᵈ day of November, 2005.

Leif B. Erickson
United States Magistrate Judge

## RATIONALE

## I. Background

Larry and Mari Sanders (hereinafter "the Sanders"), husband and wife, own two parcels of property located in Hot Springs, Montana, particularly described as follows:

> Lot Six (6) in Block B, Maillet's Second Addition to Hot Springs, Montana, according to the map of plat on file and of record in the office of the Clerk and Recorder, Sanders County Montana (hereinafter "residence").

Decl. Ham, Ex. C1 (March 23, 2005)

> Lots 7 and 8 of Block 22 of Pineville No. 2 Addition of Hot Springs, Montana, according to the plat thereof on file and of record in the office of the Clerk and Recorder of Sanders County, Montana (hereinafter "Pioneer bar" or "the bar").

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - PAGE 2

*Id.* at Ex. C3.

The Sanders acquired title to the residence on March 30, 1990 by Warranty Deed reflecting conveyance of title to the Sanders as joint tenants. Decl. Ham, Ex. C1. They recorded a Declaration of Homestead on the residence on December 12, 2002. Aff. Mari Sanders, ¶ 18 (April 14, 2005).

Title to the Pioneer Bar was originally acquired solely by Mari Sanders (hereinafter "Mrs. Sanders"), as reflected by a Warranty Deed dated June 10, 1987. Defs.' Response, 2:13 (April 14, 2005); Govt.'s Uncontroverted Facts, ¶ 16.

Mrs. Sanders first purchased the Bar in 1984 and, using the bar's proceeds, paid the entire $40,000 purchase price by 1991. Depo. Mari Sanders, 12:22-14:25 (January 12, 2005). In addition, the liquor license for the Pioneer Bar is held solely in Mrs. Sander's name, and all revenue generated by the bar has been reported exclusively on her income tax returns. Aff. Mari Sanders, ¶ 4-7. Pioneer Bar profits, however, pay for many of the Sanders' household expenses - including car insurance - and covered Mr. Sanders' car payments while he was incarcerated from November 2002 until June 2004. Depo. Mari Sanders, 37:14-38:4; 29:5-7.

Prior to and during the Sanders' marriage, Larry Sanders (hereinafter "Mr. Sanders") also owned and operated the Mint Bar, located in Plains, Montana. Aff. Larry Sanders, ¶¶ 3-17 (April

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - PAGE 3

14, 2005).  The Mint Bar burned down in 1997, and Mr. Sanders acquired a loan to rebuild and restock the bar using the Pioneer Bar as collateral.  Depo. Mari Sanders, 27:14; Depo. Larry Sanders, 20:12-15.  However, Mr. Sanders did not appear on the title to the Pioneer Bar at that time.  Depo. Larry Sanders, 29:23-30:3.  In 1999, Mr. Sanders sold the Mint Bar, the terms of which required the purchaser to direct monthly payments into an escrow account owned by the Sanders.  Govt.'s Memo. in Support, 5:20-23 (March 23, 2005).  The proceeds from this escrow account currently pay the mortgage, property taxes, and insurance for the Sanders' residence in Hot Springs.  Depo. Mari Sanders, 23:5-21; Depo. Larry Sanders, 15:16-23.

The Internal Revenue Service (hereinafter "IRS") assessed tax liabilities against Mr. Sanders for unpaid taxes associated with his ownership of the Mint Bar that accrued during the years 1994-1999, resulting in the Plaintiff recording several Notices of Federal Tax Liens with the Sanders County Recorder.  Decl. Ham, Ex. A Form 2866; ¶¶ 8-11.  Mr. Sanders received correspondence from the IRS regarding his outstanding debt, and he subsequently discussed his indebtedness with Mrs. Sanders. Depo. Larry Sanders, 27:10-19.  Starting February 28, 2000, Plaintiff filed additional Notices of Tax Liens for taxes owed by Mr. Sanders.  Decl. Ham, Exhibit G.  Mr. Sanders has settled a few of his tax obligations but still remains indebted to the IRS

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - PAGE 4

in the amount of $31,545.94 plus statutory penalties and interest provided by law.  Decl. Ham, Exhibit A (March 23, 2005); Govt.'s Uncontroverted Facts, ¶ 3.

On February 13, 2001, Mrs. Sanders executed a Quitclaim Deed conveying the Pioneer Bar from Mrs. Sanders to both Mr. and Mrs. Sanders "as joint tenants (and not as tenants in common)".  Depo. Mari Sanders., Ex. 3.  The purpose of the conveyance was to enable Mr. Sanders to secure a loan using the Pioneer Bar as collateral.  Depo. Mari Sanders, 32:11-13; Depo. Larry Sanders, 28:4-10.  Mr. Sanders never received this loan.  Depo. Larry Sanders, 28:11-12.

Plaintiff seeks in this motion, brought pursuant to § 7403 of the Internal Revenue Code, to reduce to judgment the tax liabilities, penalties, and interest assessed against Mr. Sanders and to foreclose its tax liens against the aforementioned two parcels of real property in satisfaction of the judgment. Govt.'s Memo. in Support, 2:8-14.  Plaintiff contends 26 U.S.C. § 7403 allows it to enforce its tax liens by foreclosure sale regardless of whether an innocent third-party, together with the delinquent taxpayer, holds an interest in the real property. Govt.'s Memo. in Support, 9:6-10.  In sum, Plaintiff wishes to reduce the Pioneer Bar and residence to cash, compensate Mrs. Sanders for her one-half interest in the properties and apply the balance of the proceeds toward Mr. Sanders's outstanding tax

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - PAGE 5

liabilities.

In response, Defendants argue there is a genuine issue of fact precluding summary judgment as to the amount of Mr. Sanders's indebtedness to Plaintiff.  Defendants allege payments were made towards Mr. Sanders's tax liabilities, although Mr. Sanders admits he is still indebted to Plaintiff.  Defs.' Statement of Genuine Issues, ¶ 2 (April 15, 2003).

Defendants also contend Plaintiff's lien cannot extend beyond the property interests held by Mr. Sanders.  Defs.' Reply Br., 3:8.  In this respect Defendants maintain this Court must determine what interests in the two properties are held by each of the Sanders, and then force only the sale of Mr. Sanders's interests, not the entire property, citing *In re Estate of Garland*, 279 Mont. 269, 928 P.2d 928 (1996). *Id.* at 3:11-14. Defendants assert Plaintiff's foreclosure on the Pioneer Bar will, in effect, create a tenancy in common between Mrs. Sanders and Plaintiff, and thus the proceeds from the ensuing sale must be divided according to the parties' individual contributions in acquiring the property. *Id.* at 5:15-19.  As a result, Defendants contend Mrs. Sanders would be entitled to 100 % of the proceeds because she furnished the entire consideration for acquiring the bar. *Id.* at 6:17-18.

Lastly, Defendants argue this Court should preclude a forced sale of the residence due to the consequent under compensation

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - PAGE 6

that will unduly prejudice Mrs. Sanders.  *Id.* at 11:16-18.  In support, Defendants cite Mrs. Sanders's expectation that her Homestead Declaration protects her interests in the property from forced sale, and that proceeds from a forced sale would be an inadequate substitute for a roof over her head.  *Id.* 11:15-16. Defendants rely on *U.S. v. Johnson*, 743 F. Supp. 1331 (D.Kan. 1996), in which the court exercised its discretionary power to protect a wife's home from her husband's tax liabilities.

## II. APPLICABLE LAW - SUMMARY JUDGMENT

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A fact is material if it would affect the outcome of a dispute, and an issue is genuine if a reasonable trier of fact could find for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Once one party has filed a properly supported motion for summary judgment, the burden shifts to the nonmoving party to present specific evidence showing that a triable issue of fact remains.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The mere possibility of a disputed factual issue is insufficient to defeat summary judgment.  *Summers v. A. Teichert & Sons, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997).

The party seeking summary judgment bears the initial burden

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - PAGE 7

of informing the Court of the basis for its motion , and
identifying those portions of the pleadings, depositions, answers
to interrogatories, and admissions on file together with the
affidavits, if any, which it believes demonstrates the absence of
any genuine issue of material fact.  *Celotex*, 477 U.S. at 323.

Where the moving party has met his initial burden with a
properly supported motion, the party opposing the motion "may not
rest upon the mere allegations or denials in his pleading, but
... must set forth specific facts showing that there is a genuine
issue for trial." *Anderson*, 477 U.S. at 248 (citing *First
National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253
(1968).  "A genuine issue of material fact does not spring into
being simply because a litigant claims that one exists.  Neither
wishful thinking ... nor conclusory responses unsupported by
evidence, ... will serve to defeat a properly focused Rule 56
motion." *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.
1990).

### III. DISCUSSION

In an action to collect taxes, the government has the
initial burden of proof.  *U.S. v. Stonehill*, 702 F.2d 1288, 1293
(9th Cir. 1983).  Typically, the government can carry that burden
by merely introducing assessments of taxes due, and a presumption
of correctness attaches to those assessments thus establishing a
prima facie case.  *Id*.  However, the presumption of correctness

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - PAGE 8

does not arise without support by a minimal evidentiary
foundation. *Weimerkirch v. Commissioner*, 596 F.2d 358, 360 (9th
Cir. 1979). In response, a taxpayer must show the assessments
are "arbitrary and erroneous" in order to rebut the presumption
of correctness. *Stonehill*, 702 F.2d at 1294 (quoting *Helvering
v. Taylor*, 293 U.S. 507, 515 (1935)). Furthermore, if the
assessment is based upon multiple items, then the presumption of
correctness attaches to each item. *Id.* Proof of error as to one
item destroys its individual presumption, yet the other items
retain their presumption of correctness. *Id.*

Here, in order to meet its burden, Plaintiff has submitted
Certificates of Assessment, Forms 4340, which identify Mr.
Sanders and the amount of taxes assessed for tax periods in 1994
through 1999. These certificates establish the minimum
evidentiary foundation, and thus carry a presumption of
correctness.

Defendants respond merely that the assessments submitted to
this Court do not accurately reflect previous payments made
toward various tax liabilities, claiming thereby to create a
genuine issue of fact precluding summary judgment. Defs.'
Statement of Genuine Issues, ¶ 2. Defendants have not, however,
other than their self serving response, provided any evidence in
support of their position. That is, nowhere in the record do
they provide copies of cancelled checks or book entries or any

other indicia of payment having actually been made by them to the IRS which would meet their burden to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, supra.

Having determined there is no issue of fact as to the amount claimed by the Plaintiff, the court turns to the remedy available to the Plaintiff.  Article I, Section 8, of the United States Constitution grants the government authority to levy and collect taxes, and that constitutionally mandated authority is necessary to a properly functioning government.  *U.S. v. Rodgers*, 461 U.S. 677, 697 (1983).  More specifically, 26 U.S.C. § 6331 allows the government to levy upon and seize all property and property rights belonging to the tax debtor.  26 U.S.C. §§ 6331(a)-(b). Section 7403 reaches even further, allowing the government to enforce a federal tax lien through a forced sale of property in which the tax debtor has *any* interest.  In part, Section 7403 provides:

> In any case where there has been a refusal or neglect to pay any tax, or to discharge any liability in respect thereof, whether or not levy has been made, the Attorney General or his delegate, at the request of the Secretary, may direct a civil action to be filed in a district court of the United States to enforce the lien of the United States under this title with respect to such tax or liability or to *subject any property, of whatever nature, of the delinquent*, or *in which he has any right, title, or interest*, to the payment of such tax or liability (emphasis added).

26 U.S.C. § 7403(a).

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - PAGE 10

The statute incorporates state law for the purpose of ascertaining the interests in the property held by the tax debtor and any affected third-party. *U.S. v. Overman*, 424 F.2d 1142, 1144 (9th Cir. 1970) (citing *Aquinilo v. U.S.*, 363 U.S. 509 (1960)). If state law determines a tax debtor has an interest in property, then federal law will attach a lien to that property. *Id.* at 1144.

Generally, § 7403 provides the government with a cumulative collection device which carries with it the ability to subject jointly-owned properties to forced sale, even though the other property owners have no tax liabilities. See *Overman*, 424 F.2d at 1146; *Rodgers*, 461 U.S. at 693-94. However, under § 7403, the government's authority is not absolute: the government cannot retain more than the taxpayer's share in the property, and it must return the proceeds attributable to affected third parties' interests. *Overman*, 424 F.2d at 1146.

In *United States v. Rodgers*, the Supreme Court explored the application of § 7403 when applied to jointly-owned properties in which one owner had tax liabilities. There, Mrs. Rodgers attempted to preclude a sale of her home by virtue of Texas's homestead laws, arguing that only her husband's interest should be subject to forced sale. *Rodgers*, 461 U.S. at 680. Although the Court determined Mrs. Rodgers had a vested property interest and Texas's laws were near-absolute in their protections, it

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - PAGE 11

found § 7403 was specifically designed to force a sale of property jointly owned by tax debtors and innocent parties. *Id.* at 697, 670. According to the Court, "the provisions of § 7403 are broad and profound." *Id.* at 699.

In *Rodgers*, the Court recognized the conflict between collecting taxes and subjecting innocent third-parties to undue prejudice by that effort. See generally *Rodgers*, 461 U.S. 677. As a result, the Court established a balancing test by which district courts may exercise discretion when applying this particular section of the Internal Revenue Code. *Id.* at 710. The Court stated a district court should consider four factors: (1) whether the government's financial interests would be prejudiced by the sale of only the debtor's interest; (2) whether a non-liable third-party has a recognized expectation the property would not be subject to forced sale; (3) the likely prejudice to a third party resulting from dislocation costs and possible under compensation; and (4) the relative character of liable and non-liable interests in the property. *Id.* at 710-11. The Court noted, however, that this discretion is limited and should be exercised "rigorously and sparingly" given the government's paramount interest in collecting delinquent taxes. *Id.* at 711.

In *Overman*, the Ninth Circuit decided the federal government could force the sale of community property in which a tax debtor

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - PAGE 12

had an interest.  There, the tax liabilities did not arise from the property in dispute; in fact, the husband's indebtedness occurred prior to his marriage.  *Overman*, 424 F.2d at 1144.  In his defense, the husband asserted Washington law creates certain limitations on the extent and quality of his ownership, and therefore his limited interest in the property was nonattachable. *Id.* at 1145.  The Ninth Circuit disagreed, reasoning all that was required under § 7403 was an interest in the property regardless of its quality or extent.  *Id.*  Furthermore, the *Overman* court stated the government's power under § 7403 was not limited to the tax debtor's interest in the property.  *Id.* at 1146.  Instead, "the statute contemplates that the district court may subject the interests on persons other than the taxpayer to an involuntary conversion during the course of enforcing the Government's lien on the delinquent taxpayer's interest in the same property."  *Id.* Accordingly, the Ninth Circuit upheld the district court's ruling to order a sale of the entire property and compensate innocent parties for their lost individual interests.  *Id.* at 1147.

THE RESIDENCE

Under *Rodgers*, this Court must turn to Montana law in order to ascertain Mr. Sanders's interest in the residence.  Mont. Code Ann. § 70-1-307 (2003) defines a joint interest as one "owned by several persons *in equal shares* by a title created by a single

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - PAGE 13

... transfer, when expressly declared in the ... transfer to be a joint tenancy ... ." (emphasis added). According to the Warranty Deed signed March 30, 1990, Janise Green conveyed the residence property to Defendants, as "joint tenants". See Paul Ham's Decl., Exhibit D (March 23, 2005). Under Montana law, this Court finds Mr. Sanders has a present and substantial interest in the residence, a one-half share as there are but two persons named on the deed, and it is therefore subject to foreclosure under § 7403.

1. **Plaintiff will be prejudiced by a sale of only Mr. Sanders's interest in the residence.** Foreclosure on only Mr. Sanders's interest in the residence would leave Plaintiff in an awkward and impractical situation. Namely, in order to recoup its delinquent taxes, Plaintiff must sell the property acquired in the foreclosure. If that property is a partial interest in the residence, then the resulting sale will unlikely produce as much money as would be produced by a sale of the entire residence. Plaintiff simply has no choice but to foreclose on the entire property in order to realize the taxes due. Further, this Court notes Defendants concede Plaintiff would be prejudiced in this regard. Because a sale of one-half the residence would not be as valuable as a sale of the entire residence, this Court believes this factor weighs in favor of Plaintiff.

2. **Defendants' Homestead Declaration does not immunize the**

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - PAGE 14

**residence from enforcement of tax liens.** This factor requires the Court to consider whether Mrs. Sanders has a legally recognized expectation that her home would be somehow protected from a sale held to collect under a judgment foreclosing federal tax liens assessed against her joint tenant. In her defense, Mrs. Sanders suggests Montana homestead laws establish the residence as an enclave protected from creditors. However, the Government's overweaning right to enforce its tax liens does not depend on Montana laws regulating creditors' rights generally. *Aquinilo*, supra, 363 U.S. at 512-14.

The Supremacy Clause provides the United States with a means for sweeping aside state-created exemptions against forced sale. *Rodgers*, 461 U.S. at 700. Therefore, state laws regulating creditors do not bind the United States in collecting delinquent taxes. *Overman*, 424 F.2d at 1146. Quite simply, the United States is no ordinary creditor: its tax collecting authority is an "exercise of a sovereign prerogative, incident to the power to enforce the obligations of the delinquent taxpayer himself, and ultimately grounded in the constitutional mandate to 'lay and collect taxes.'" *Rodgers*, 461 U.S. at 697 (citing *Bull v. U.S.*, 295 U.S. 247 (1935)). In *Rodgers*, for example, the Supreme Court ruled Texas's homestead laws did not shield the plaintiff's residence from forced sale. *Id.* at 702. There, the Court decided Texas's near-absolute homestead laws were adequately

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - PAGE 15

discharged by payment of compensation, and "no further deference to state law [was] required, either by § 7403 or by the Constitution." *Id*. *Rodgers* is not limited to co-tenants, as Defendants contend; instead, it provides broad guidance for applying § 7403 where non-liable interests are inter-mixed with those of the tax debtor.

Accordingly, Mrs. Sanders cannot show any legally recognized expectation that the residence would not be subject to sale in satisfaction of the federal tax liens.

**3. A forced sale of the residence will not prejudice Mrs. Sanders beyond that inherent in similar proceedings under § 7403.** Defendants rely upon mere speculation and *U.S. v. Johnson*, 943 F. Supp. 1331 (D. Kan. 1996) in arguing Mrs. Sanders would be unduly prejudiced by the forced sale of her residence. This Court finds *Johnson* factually distinguishable, and Defendants have failed to offer any evidence beyond conjecture on the claimed prejudice.

In *Johnson*, the United States sought to foreclose on its federal tax liens under § 7403 and force a sale of Mrs. Johnson's home. *Johnson*, 943 F. Supp. at 1333. There, the District Court exercised its reasoned discretion accorded by § 7403 based upon finding that Mrs. Johnson's compensation would be inadequate to relieve the prejudice caused by a forced sale. *Id*. at 1335. Although the court noted Mrs. Johnson would be without a home -

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - PAGE 16

which is a natural consequence of a § 7403 proceeding - its decision to preclude summary judgment was based largely upon her personal characteristics. *Id.* For instance, the court mentioned she had occupied the homestead for thirty-eight years, lived on a fixed-income, had a limited educational background, and likely could not purchase another residence following the forced sale. *Id.* As a result, the court denied the government's motion for summary judgment. *Id.* at 1335.

This Court has likewise had an opportunity to exercise its limited discretion under § 7403 in *U.S. v. Sellner*, 1990 WL 132710 (D. Mont.). In limiting foreclosure there, this Court relied upon the third-party's lack of employment, her limited assets, and the fact her three children were still living at home, one of whom was severely mentally handicapped. *Id.* at 7. Based upon those considerations, this Court precluded foreclosure on Mrs. Sellner's interest in the property. *Id.* at 8.

The considerations weighing heavily in *Johnson* and *Sellner* are patently absent in the instant case. Here, Defendants' have failed to show specific considerations that warrant this Court's exercise of limited discretion. This Court recognizes that while compensation is generally not an adequate substitute for one's home, some degree of prejudice is inherent in all proceedings under § 7403, especially those where non-liable parties are involved. *See Rodgers*, 461 U.S. at 704. However, nothing in the

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - PAGE 17

record suggests Mrs. Sanders will experience a level of prejudice similar to that in *Johnson* or *Sellner*. Defendants have failed to show Mrs. Sanders's dislocation costs would be greater than in any other foreclosure on a tax lien, and therefore this factor weighs in Plaintiff's favor.

**4. The character and value of the liable and non-liable interests in the residence are essentially equivalent.** Citing *Rodgers*, Defendants assert Mrs. Sanders's possessory interest precludes a sale of the entire property. Defs.' Response, 7-11. However, Defendants' reliance on *Rodgers* is misplaced and taken from its proper context: the Court did not mean that *any* possessory interest precludes selling an entire property. Under this fourth factor, the *Rodgers* Court imagined an example where the possessory interests in a property disproportionately favored the innocent party, and thus common-sense would discourage a sale of third party interests. *Rodgers*, 461 U.S. at 711. The Court stated:

> if, for example, in the case of real property, the
> third party has no present possessory interest or fee
> interest in the property, there may be little reason
> not to allow the sale; if, on the other hand, the third
> party not only has a possessory interest or fee
> interest, but that interest is worth 99% of the value
> of the property, then there might well be virtually no
> reason to allow the sale to proceed.

*Id.*

According to the Warranty Deed, Defendants purchased the residence as joint tenants. See Paul Ham's Decl., Exhibit D. As

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - PAGE 18

noted, Defendants each thereby own a one-half interest in the residence, and each has an equal possessory interest in the property. They may not therefore rely on the example cited from *Rodgers* in order to preclude summary judgment. This Court finds this factor weighs in Plaintiff's favor.

## Pioneer Bar

Before determining whether the government can foreclose its lien on the Pioneer Bar, this Court must first ascertain Mr. Sanders' interest in the bar. Defendants contend Mr. Sanders has no equitable interest in the Pioneer Bar; however, under *Overman*, all that is required under § 7403 is *any* interest in the property regardless of its quality or extent. Again Mont. Code Ann. § 70-1-307 (2003) applies, and since the Quitclaim Deed shows a conveyance from Mrs. Sanders to Mr. and Mrs. Sander as "joint tenants (and not as tenants in common)" Mr. Sanders owns a one-half interest in the Pioneer Bar, as well as the accompanying right of survivorship to Mrs. Sanders's interest.

This Court notes Defendants' contention that Mrs. Sanders owns the entire equitable interest in the Pioneer Bar due to her sole efforts in purchasing the bar, yet that fact remains beyond the point and wholly irrelevant. Reiterating an earlier point, this Court is not concerned with the extent or quality of Mr. Sanders's interest in the bar business; this Court is only concerned with whether Mr. Sanders *has* any interest in the real

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - PAGE 19

property pursuant to Montana law. See *Overman*, 444 F.2d 1142. This Court also rejects Defendants' argument that the Quitclaim Deed did not confer an interest to Mr. Sanders. The fact of the matter remains that, according to Mont. Code. Ann. § 70-1-307, he owns a one-half interest in the real property, notwithstanding Mrs. Sander's sole efforts in purchasing and operating the bar business. Furthermore, although Mr. Sanders makes no direct profit from the Pioneer Bar, the bar's proceeds pay many of his household expenses and he stands to inherit the remainder of the real property if Mrs. Sanders precedes him in death.

Lastly, Defendants' argument that a foreclosure on Mr. Sanders's interest, under *In re Estate of Garland*, 279 Mont. 269, 928 P.2d 928 (1996), would create a tenancy in common is without merit. While a conversion from a joint tenancy to a common tenancy is presumably correct in its proper context, § 7403 allows Plaintiff to sell Mrs. Sanders's interest as well by means of a sale of the entire property, and thus there would be no severance of the Sanders' interests. Therefore, upon foreclosure, Defendants will not have any remaining interest in the Pioneer Bar, and the conversion scenario is not applicable. Additionally, Defendants stretch *Garland* beyond its intended scope: the case was meant to clarify how district courts should determine the respective property interests of a killer and decedent who once lived as joint tenants. See generally *Garland*,

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - PAGE 20

279 Mont. 269. Following foreclosure, there is simply no tenancy in common in the instant dispute; thus, Plaintiff's protestations based upon *Garland* are wholly unavailing.

The Court will now proceed to consider the *Rodgers* factors with regard to the Pioneer Bar property.

**1. Plaintiff will be prejudiced by a sale of only Mr. Sanders's interest in the Pioneer Bar.** If Plaintiff were to foreclose on only a one-half interest in the bar, the resulting sale would likely produce significantly less than what would be produced upon sale of the entire property. Therefore, common-sense requires Plaintiff sell the entire property in order to obtain the most value it can out of the property, rather than force Plaintiff into the awkward and difficult position of selling a one-half interest. Further, Defendants concede this factor weighs in Plaintiff's favor.

**2. Mrs. Sanders does not have a recognized expectation the Pioneer Bar would be protected from forced sale.** Here, there is some indication Defendants thought that under Montana law Mr. Sanders's one-half interest in the bar was merely a bare legal title and that Mrs. Sanders's contributions to acquiring the bar would weigh heavily. Defs.' Response, 6:5-20. Nevertheless, as noted, Mrs. Sanders's contributions to purchasing the Pioneer Bar are beside the point. Montana law clearly creates a joint

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - PAGE 21

interest based on the language of the Quitclaim Deed. It is also of note that the IRS had filed Notices of Federal Tax Liens well before Mrs. Sanders conveyed a one-half interest in the bar to Mr. Sanders on February 13, 2001, and therefore at the time of conveyance, given their relationship, Mrs. Sanders likely had notice of the tax liens against Mr. Sanders. Certainly, by her own testimony, she was aware that Mr. Sanders was delinquent in payment of taxes owing to the IRS during the 1990s which preceded the date of the transfer. See Depo. Mari Sanders, 41-46. The court finds that whatever her professed expectations may have been, she was well aware of Mr. Sanders tax obligations at the time she transferred an interest in the bar to him and could not reasonably, given the laws of the state of Montana, have expected that once transferred his interests would not be subject to execution by the United States. Further, given the laws of the state of Montana, she could not reasonably expect that he would have received less than a full one-half interest. Had she intended to convey less than a full one-half interest she ought to have so stated in the deed of conveyance. This factor weighs in favor of Plaintiff.

**3. A forced sale of the Pioneer Bar will not prejudice Mrs. Sanders beyond that already inherent in similar proceedings under § 7403.** Each foreclosure under § 7403 naturally carries an ominous degree of prejudice, yet Defendants have failed to show

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - PAGE 22

prejudice in this foreclosure which would surpass that which
normally occurs in like proceedings.  The Supreme Court
envisioned this third factor to weigh in defendants' favor when
special circumstances of prejudice arise, but not merely when a
foreclosure seems unfair.  If fairness always tipped the scales
toward non-liable parties, then § 7403 would become a powerless
tool when the government seeks to foreclose on jointly-owned
properties.  Furthermore, although Mrs. Sanders furnished the
entire consideration for the Pioneer Bar, the fact remains that
she voluntarily quitclaimed a one-half interest to Mr. Sanders.
She is entitled to be compensated for her remaining interest from
the proceeds of any sale.  This Court finds this factor weighs in
Plaintiff's favor.

**4. Defendants have equal interests in the Pioneer Bar.**

Although it is true Mrs. Sanders furnished the entire
consideration for the Pioneer Bar, it is also wholly irrelevant.
According to Montana law, the Quitclaim Deed signed February 13,
2001, gives Mr. and Mrs. Sanders equal interests in the bar, and
thus Plaintiff is not dispossessing a non-liable party of a
substantially greater interest than the tax debtor.  This factor
weighs in Plaintiff's favor.

APPORTIONMENT OF PROCEEDS

     Property interests should be defined according to state law.
*Aquinilo v. U.S.*, 363 U.S. 509, 513-15 (1960).  Furthermore, the

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - PAGE 23

government's interests cannot extend beyond that of the delinquent taxpayer, and the government may not collect more than the property interests liable for that debt. *Rodgers*, 461 U.S. at 690. In addition, the loss of a homestead is the sort of property interest for which an innocent party must be compensated, and this Court must distribute the proceeds from the sale according to the respective interests of the parties. *Id.* at 697-98.

CONCLUSION

Despite the personal dislocation costs Mrs. Sanders will suffer and the apparent unfairness in forced sale of a non-liable party's property, Plaintiff's interest in the prompt collection of taxes should be satisfied. Section 7403 was specifically designed to address non-liable property interests, and this Court has only limited discretion in precluding a forced sale once a delinquent taxpayer's interest is established. In order to recoup Mr. Sanders's delinquent taxes, Plaintiff should be permitted to reduce the owed taxes, penalties and interest to judgment and to sell the real property comprising the Pioneer Bar as well as the residence in satisfaction thereof.[1]

---

[1] All the foregoing being said, it would be hoped the parties could work out some accommodation so as to avoid this drastic result. It is not the goal of this court, nor likely that of the United States government, to needlessly drive people from their homes or livelihood.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - PAGE 24

```
[docket ]                    CIVIL/CRIMINAL                    [ vfmadr]
                              Docketing                          [ADDR]


              9:04-cv-35
Short Title: USA                    v. Sanders
Type: cv    cc   Judge: Molloy                Magistrate: Erickson
-------------------------------------------------------------------
-----------Event-------------Action-------------Relief-----------Trans #----
labels  -          -        |-        |-        -        -      | 1191487
**** Form: ADDRESS LABELS ONLY                                     ****
*************** party            Direct Addressees in Case: 9:04-cv-00035 *****

 --  2. Blondin           Philip
 --  3. Baskett           Richard
 --  4. Torgenrud         Donald
 --  5. Fletcher          Robert
 --  6. Cotner            David

[A]cc, [S]lct, [E]vry, [C]lr, [I]ns, [M]ore, [U]p/[D]n, [N]x/[P]v, [Q]uit
total: 6        selected: 0        current: 1          :
```

CERTIFICATE OF MAILING
DATE: 11-4-05 BY:
I hereby certify that a copy
of this order was mailed to: