FILED
MISSOULA, MT

2006 FEB 21 PM 4 48

PATRICK E. DUFFY

BY _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CV 04-35-M-DWM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| LARRY SANDERS, MARI SANDERS, | ) | |
| VALLEY BANK OF RONAN, FIRST | ) | |
| STATE BANK, SANDERS COUNTY | ) | |
| DEPARTMENT OF REVENUE, and | ) | |
| STATE OF MONTANA, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff filed a motion for summary judgment on March 23, 2005. Judge Erickson issued his Findings and Recommendations on November 3, 2005, recommending that Plaintiff's motion be granted. Defendants did not timely object and so have waived the right to de novo review of the record. 28 U.S.C. § 636(b)(1). This Court will review the Findings and Recommendation for clear error. *McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981). Clear error exists if the Court is left with a "definite and firm conviction that a mistake

-1-

has been committed." *United States v. Syrax*, 235 F.3d 422, 427 (9th Cir. 2000).

## I.   Background

Larry and Mari Sanders (the Sanders) are married and own two parcels of property in Hot Springs, Montana.  The property includes a residence and a bar:

> Lot Six (6) in Block B, Maillet's Second Addition to Hot Springs, MT, according to the map of plat on file and of record in the office of the Clerk and Recorder, Sanders County Montana (the residence).

> Lots 7 and 8 of Block 22 of Pineville No. 2 Addition of Hot Springs, MT, according to the plat thereof on file and of record in the office of the Clerk and Recorder of Sanders County, MT (the Pioneer Bar or Bar).

On March 30, 1990 they acquired title to the residence through a warranty deed, which stated that they took possession as joint tenants.  The Sanders proceeded to record a Declaration of Homestead on the residence on December 12, 2002.

Originally Mari Sanders solely acquired the Bar as demonstrated by a 1987 warranty deed.  Mrs. Sanders paid the purchase off by 1991.  She also holds the liquor license for the Bar in her name alone and all revenue generated by the Bar has been reported on her individual income tax return.  However, the Sanders have jointly used the Bar's profits to pay for miscellaneous expenses.

Larry Sanders owned and operated the Mint Bar, located in Plains, MT, both before and during the marriage.  The Mint Bar burned down in 1997 and he then used a loan to rebuild and

-2-

restock the Mint Bar using the Pioneer Bar as collateral.  At
that time, Mr. Sanders did not appear on the title for the
Pioneer Bar.  In 1999, Mr. Sanders sold the Mint Bar and provided
for the monthly payments to be deposited into an escrow account
owned by the Sanders.  The proceeds from this account currently
pay the mortgage, property taxes, and insurance for the
residence.

The Internal Revenue Service (IRS) assessed tax liabilities
against Mr. Sanders for unpaid taxes that accrued during the
years 1994-1999 associated with his ownership of the Mint Bar.
Consequently, Plaintiff recording several Notices of Federal Tax
Liens with the Sanders County Recorder.  In February 2000, the
IRS filed additional notices for taxes owed by Mr. Sanders.  Mr.
Sanders settled a few of these obligations but still remains
indebted to the IRS in the amount of $31,545.94 in addition to
statutory penalties and interest provided by the law.

The Sanders discussed the tax problem and on February 13,
2001, Mrs. Sanders quitclaimed the Pioneer Bar to the Sanders "as
joint tenants (and not as tenants in common)."  They planned to
secure a loan to pay the tax obligations using the Bar as
collateral.  Mr. Sanders never received the loan.

Plaintiff seeks to reduce to judgment the tax liabilities,
penalities, and interest assessed against Mr. Sanders, via 26
U.S.C. § 7403 of the Internal Revenue Code, and to foreclose its
tax liens against the aforementioned two parcels of real property

in satisfaction of the judgment. Plaintiff asserts § 7403 allows it to enforce its tax liens by foreclosure sale regardless of whether an innocent third party, together with the delinquent taxpayer, holds an interest in the real property. Accordingly, Plaintiff seeks to reduce the Pioneer Bar and the residence to cash, compensate Mrs. Sanders for her share, and then apply the proceeds of the sales to Mr. Sanders' debts.

Defendants counter that there is a genuine issue of fact regarding the amount of indebtedness. Defendants state that payments have been made to the IRS, but Mr. Sanders also admits that he still owes the IRS money.

Defendants also contend that Plaintiff's lien cannot apply to the property owned by Mrs. Sanders. They assert that the IRS must determine exactly what Mr. Sanders owns and then sell only that portion of the property. They further argue that the sale of the Pioneer Bar will create a tenancy in common between Plaintiff and Mrs. Sanders, and thus, the proceeds must be divided according to the parties' individual contributions in acquiring the property. As a result, Defendants aver that Mrs. Sanders would be entitled to 100% of the proceeds of the sale of the Bar.

Finally, Defendants argue this Court should preclude a forced sale of the residence because Mrs. Sanders would not be properly compensated and therefore prejudiced. They cite the Homestead Declaration as support for the contention that Mrs.

Sanders expected that her interests were protected from forced sale. Defendants cite *U.S. v. Johnson*, where the court exercised discretionary power to protect a wife's home from forced sale for her husband's tax liabilities, as support for this contention. 743 F.Supp. 1331 (D. Kan. 1996).

Based on this reasoning, Defendants filed a cross motion for partial summary judgment seeking a ruling that the two pieces of property could not be sold under § 7403, to dismiss Mrs. Sanders as a party in the case, and attorney fees and costs for the defense of Mrs. Sanders in the case.

## II.   Analysis

### A.   Summary Judgment

A party moving for summary judgment is entitled to such if the party can demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©). A party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). On a motion for summary judgment, this Court must determine whether a fair-minded jury could return a verdict for the nonmoving party. *Id.* at 252.

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Where the moving party has met his initial burden with a properly supported motion, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, at 248.  The nonmoving party may do this by use of affidavits (including his own), depositions, answers to interrogatories, and admissions.  *Id*.

In evaluating the appropriateness of summary judgment the Court must first determine whether a fact is material; and if so, it must then determine whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the Court.

As to materiality, the applicable substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude entry of summary judgment.  Factual disputes which are irrelevant or unnecessary to the outcome are not considered.  *Anderson*, at 248.

If a fact is found to be material, summary judgment will not lie if the dispute about that fact is genuine.  In other words, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, then summary judgment should not

be granted. *Id.* In essence, the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law. *Id.* at 251-52. Though the *Anderson* Court stated that at the summary judgment stage the judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial, it also stated that if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249-50.

## B.    Discussion of Pertinent Law

The government has the initial burden of proof when it pursues an action to collect taxes. *U.S. v. Stonehill*, 702 F.2d 1288, 1293 (9th Cir. 1983). The government can meet that burden by merely introducing assessments of taxes due and then a presumption of correctness attaches to those assessments, establishing a prima facie case. *Id.* However, the presumption of correctness still requires a minimal evidentiary foundation. *Weimerkirch v. Commissioner*, 596 F.2d 358, 360 (9th Cir. 1979). A tax payer may rebut the presumption of correctness by demonstrating that the assessments are "arbitrary and capricious." *Stonehill*, 702 F.2d at 1294 (citing *Helvering v. Taylor*, 293 U.S. 507, 515 (1935)). Furthermore, if the assessment is based upon multiple items, then the presumption of correctness attaches to every item. *Id.* Proof of error as to

one item destroys its individual presumption, but the presumption of correctness that attached to the other items remains.  *Id.*

In this case, Plaintiff has submitted Certificates of Assessment, Forms 4340, to meet its burden.  These forms identify Mr. Sanders and the amount of taxes assessed for tax periods in 1994 through 1999.  These certificates establish Plaintiff's minimum burden and carry the presumption of correctness.

Defendants do not rebut these records with any evidence of their own.  They simply assert the assessments are not accurate. They make no showing of some indicia of payment to the IRS that would demonstrate there is a genuine issue of fact.  Thus, there is no issue of fact regrading the amount Mr. Sanders owes the IRS.

Article I, Section 8 of the United States Constitution grants the government the authority to levy and collect taxes, and that constitutionally mandated authority is necessary to maintain a properly functioning government.  *U.S. v. Rodgers*, 461 U.S. 677, 697 (1983).  Additionally, 26 U.S.C. § 6331 allows the government to levy upon and seize all property and property rights belonging to the tax debtor.  26 U.S.C. §§ 6331(a)-(b).  § 7403(a) allows the government to enforce a federal tax lien through a forced sale of property in which the tax debtor has any interest.

The Ninth Circuit and the Supreme Court have also held that the statute incorporates state law for the purpose of

ascertaining the interest in the property held by the tax debtor
and any affected third party. *U.S. v. Overman*, 424 F.2d 1142,
1144 (9th Cir. 1970) (citing *Aquinilo v. U.S.*, 363 U.S. 509
(1960)). If state tax law determines that a debtor has an
interest in a piece of real property, then federal law allows the
IRS to attach a lien to that property. *Id*. at 1144.

Thus, § 7403 provides the government with a collection
device that carries the ability to subject jointly-owned property
to forced sale despite the fact that a majority owner might not
have a tax liability. *See Overman*, 424 F.2d at 1146.
Nonetheless, the government's authority is not absolute: the
government cannot retain more than the taxpayer's share in the
property, and it must return the proceeds attributable to
affected third parties. *Id*. at 1146.

The Supreme Court addressed the application of § 7403 to
jointly-owned properties in which one owner had tax liabilities
in *United States v. Rodgers*. In *Rodgers*, Mrs. Rodgers attempted
to preclude the sale of her home through Texas homestead laws.
She argued only her husband's interest should be sold. *Rodgers*,
461 U.S. at 680. Although the Court determined Mrs. Rodgers had
a vested property interest and the homestead laws offered
considerable protection, the court noted § 7403 was specifically
designed to force a sale of property jointly owned by tax debtors
and innocent parties. *Id*. at 697. The Court found the
provisions of § 7403 to be "broad and profound." *Id*. at 699.

The Court fashioned a balancing test in recognition of the conflict between innocent third parties and the need to collect taxes. *Rodgers*, 461 U.S. at 677, 710.  The Court stated a district court should consider four factors: 1) whether the government's financial interests would be prejudiced by the sale of only the debtor's interest; 2) whether a non-liable third party has a recognized expectation the property would not be subject to forced sale; 3) the likely prejudice to a third party resulting from dislocation costs and possible under compensation; and 4) the relative character of liable and non-liable interests in the property.  *Id.* at 710-11.  The Court noted, however, that this discretion is limited and should be exercised "rigorously and sparingly" given the government's paramount interest in collecting delinquent taxes.  *Id.* at 711.

The Ninth Circuit addressed a similar set of circumstances in *Overman*, where the Circuit held federal government could force the sale of community property in which a debtor had an interest. In that case, the husband's indebtedness arose prior to the marriage.  He tried to assert that Washington law created limitations on the extent and quality of his ownership and therefore his limited interest was not attached, but the Circuit disagreed.  The court reasoned that all § 7403 required was an interest in the property regardless of its quality or extent. *Id.* at 1145-46.

Instead, the Circuit stated the government's interest was

not limited to the debtor's interest in the property.  The *Overman* Court upheld the district court's ruling to order the sale of entire property with compensation to innocent parties for their lost individual interests.  The decision noted that the statute anticipates the involuntary conversion of property during the course of the satisfaction of the tax lien.  *Id.* at 1147.

1.    **The *Rodgers* Test Supports the Sale of the Residence.**

Under *Rodgers*, this Court must examine Montana law to determine Mr. Sander's interest in the residence.  A joint interest is one "owned by several persons in equal shares by a title created by a single . . . transfer, when expressly declared in the . . . transfer to be a joint tenancy . . .."  Mont. Code Ann. § 70-1-307 (2005).  The March 30, 1990 warranty deed conveyed the residence to Defendants as "joint tenants." Consequently, because Mr. Sanders is one of two people listed on the deed, he has a present interest in the property, a one-half share, and that property is therefore subject to foreclosure under § 7403.

a.    **A sale of Only Mr. Sander's Share will Prejudice Plaintiff.**

This factors favors foreclosure because otherwise Plaintiff suffers prejudice.  The alternative is impractical and the sale of one-half of the property would not be as valuable as the sale of the whole property.  Accordingly, this factors favors the sale of the residence.

      **b.**    **There is no Recognized Expectation Preventing
Sale.**

The Homestead Declaration does not impede the effect of §
7403.   The government has an overwhelming right to enforce tax
liens and that does not depend on Montana laws that generally
regulate creditors' rights.   *Aquinilo*, supra, 363 U.S. at 512-14.

The Supremacy Clause provides the United States with a means
for sweeping aside state-created exemptions against forced sale.
*Rodgers*, 461 U.S. at 700.   The United States enjoys the exercise
of sovereign prerogative to "lay and collect taxes."   *Id.* at 697.
Indeed, the *Rodgers* Court found the Texas homestead laws were
adequately discharged by payment of compensation and there was no
need for further deference under § 7403.   *Id.*

Thus, Mrs. Sanders does not have a recognized expectation
that would prevent the sale of the residence.

      **c.**    **The Prejudice to Mrs. Sanders will be Similar to
that in other Proceedings under Section 7403.**

Defendants mistakenly cite *U.S. v. Johnson* to demonstrate
undue prejudice.   However, the facts in *Johnson* are
distinguishable.   In *Johnson*, the court noted that sale of the
home is the natural consequence of a § 7403 proceeding but found
that Mrs. Johnson's circumstances were compelling.   *Johnson*, 943
F. Supp. at 1333.   She had lived there for 38 years, had a
limited education, and probably could not purchase another home
afterwards.   *Id.*   Consequently, the court denied the government's
motion for summary judgment.   *Id.* at 1335.

-12-

The Montana District Court ruled similarly in *U.S. v. Sellner*, when it denied summary judgment.   1990 WL 132710 (D. Mont.).   There, Judge Lovell considered the third party's lack of employment, three children (one of whom was mentally handicapped), and limited assets.   *Id.* at 7.

The considerations from *Johnson* and *Sellner* are absent here. Defendant's have failed to demonstrate how this factor favors them.   This Court recognizes that while compensation is generally not an adequate substitute for one's home, some degree of prejudice is inherent in all proceedings under § 7403, particularly where non-liable parties are involved.   Nothing in the record suggests this Court should grant Mrs. Sanders the deference given in *Johnson* and *Sellner*.

### d.    Mr. and Mrs. Sanders Share the Equivalent Interests in the Residence.

The Sanders have an equal interest in the residence under the Warranty Deed.   Therefore, their situation is unlike the example cited in *Rodgers*, where the Court contemplated prejudice accompanying disparate levels of interest in the subject property.   Thus, this factor also supports the foreclosure.

Cumulatively, the *Rodgers* test favors the foreclosure sale of the residence requested by Plaintiff.

### 2.    The *Rodgers* Test Supports the Sale of the Pioneer Bar.

Defendants mistakenly contend that Mr. Sanders has no equitable interest in the Bar.   However, as demonstrated in *Overman*, all that is required under § 7403 is any interest in the

property, regardless of its quality or extent.  Because Mrs. Sanders quitclaimed an interest to Mr. Sanders as joint tenants, Mr. Sanders owns a one-half interest in the Bar.

Defendants assert that Mr. Sanders put no effort into the original purchase of the Bar, but that point is irrelevant.  The extent or quality of ownership are not of consequence.  Pursuant to Montana Code Annotated § 70-1-307, he owns an interest in the property and as such, it is subject to § 7403.

Finally, Defendant's argument that per *In re Estate of Garland*, 279 Mont. 269, 928 P.2d 928 (1996), the foreclosure would create a tenancy in common fails.  § 7403 allows for the sale of both interests so that there is no severance of the joint tenancy interests.  Upon foreclosure, the Sanders will not have a remaining interest in the Bar.  There is no conversion scenario as argued by Defendants.

### a.    Sale of One-Half of the Bar Prejudices Plaintiff.

As with the residence, this factor favors Plaintiff.  Sale of one-half of the property is impractical and would not result in the level of compensation that would result from the sale of the entire parcel of property.

### b.    There is no Recognized Expectation to Prevent Forced Sale.

The quitclaim deed created a joint tenancy after the IRS first filed against Mr. Sanders.  Mrs. Sanders did not grant Mr. Sanders an interest in the Bar without notice of the liens.  His own testimony supports this.  Accordingly, she has no expectation

that the Pioneer Bar would be protected from forced sale.

### c.  The Prejudice to Mrs. Sanders will be Similar to that in other Proceedings under Section 7403.

Each foreclosure under § 7403 naturally carries an ominous degree of prejudice, but Defendants have failed to show that the prejudice that will occur in this foreclosure would surpass the prejudice in like proceedings.  The Supreme Court envisioned that this factor would weigh in defendant's favor when special circumstances of prejudice arise, but not merely when a foreclosure seems unfair.  This Court finds this factor does not support Mrs. Sanders.

### d.  Defendants Own Equal Interests in the Bar.

Although Mrs. Sanders may have paid for the Bar, that point is meaningless in this context.  Mr. Sanders owns half of the Bar and under the pertinent case law that is all that matters.  This factor favors Plaintiff.

## C.  Apportionment of Proceeds.

The Supreme Court noted that property interests should be defined according to state law.  *Aquinilo*, 363 U.S. at 513-15. As previously mentioned, the government's interest cannot extend beyond the interest of the indebted taxpayer.  Finally, the loss of a homestead is the sort of property interest for which an innocent party must be compensated, and this Court must distribute the proceeds from the sale according to the respective interests of the parties.  *Rodgers*, 461 U.S. at 697-98.

## III.  Conclusion

-15-

Accordingly based on the foregoing, IT IS HEREBY ORDERED that Judge Erickson's Findings and Recommendations are adopted in full and Plaintiff's motion for summary judgment (dkt #34) is GRANTED.

IT IS FURTHER ORDERED that Defendants' cross motion for summary judgment (dkt #39) is DENIED for the reasons set forth in the Findings and Recommendations and within this Order.

DATED this _21st_ day of February, 2006.

_____
Donald W. Molloy, Chief Judge
United States District Court